[Civ. No. 41681. First Dist., Div. Three. Apr. 11, 1978.]

THE PEOPLE ex rel. STATE PUBLIC WORKS BOARD,
Plaintiff and Appellant, v.
WALTER C. TALLEUR, JR., et al., Defendants and Respondents.

694

COUNSEL

Evelle J. Younger, Attorney General, R. H. Connett, Robert L. Bergman, Assistant Attorneys General, Richard L. Mayers and Richard C. Jacobs, Deputy Attorneys General, for Plaintiff and Appellant.

Redwine & Sherrill and Justin M. McCarthy for Defendants and Respondents.

OPINION

SCOTT, Acting P. J.—Appellant State of California sought by eminent domain proceedings to condemn respondents' property for public use as a park. ▇▇ The issue on appeal is whether the court erred when it excluded testimony as to the regulations and policies of the coastal commission in determining the value of respondents' property, and in instructing the jury to disregard the effect on the value of the property arising directly or indirectly from any rule, regulation or activity of the State of California acting through the Coastal Zone Conservation Commission or the North Central Coast Regional Commission.

Respondents' property consists of approximately 25 undeveloped acres in Sonoma County lying between State Highway 1 and the Pacific Ocean and adjacent to Wright's Beach. On the stipulated date of the valuation of the property, March 26, 1975, the property was subject to the Coastal Zone Conservation Act of 1972 (former Pub. Resources Code, § 27000 et seq.) (the Act). In enacting the Act, which was an initiative measure, the People declared that the California coastal zone was a "distinct and valuable natural resource," that "the permanent protection of the remaining natural and scenic resources of the coastal zone is a paramount concern to present and future residents of the state and nation," and that it was "the policy of the state to preserve, protect, and, where possible, to restore the resources of the coastal zone for the enjoyment of the current and succeeding generations." (Former Pub. Resources Code, § 27001.) To fulfill these policies, the People also declared that it was necessary to prepare "a comprehensive, coordinated, enforceable plan for the orderly, long-range conservation and management of the natural resources of the coastal zone." (*Id.*) During the period necessary for preparation of that plan and consideration of it by

the California Legislature, the People authorized the California Coastal Zone Conservation Commission (Commission) and six regional commissions to control development in the coastal zone which might be inconsistent with the formulation and consideration of the plan. The Commission was directed to make recommendations to the state for the acquisition of lands for parks and other purposes. The subject land was recommended by the Commission to be condemned for park purposes.

The trial court, in excluding consideration of the Commission's regulations, stated: "It is simply unfair that the State may materially depress the value of a significant number of coastal properties, many of which it intends to condemn, and thereafter have the value of the subject property and other coastal properties be acquired by the State in eminent domain determined under the very laws which are responsible for the artificially depressed market."

Appellant's appraiser testified that the value of the property without reference to the Act was $187,000. Respondents' appraiser provided a valuation of $490,000. Walter Talleur, Jr., one of the owners, testified that the property was worth $510,000. The jury determined the fair market value of the property to be $350,000.

■ Under the California Constitution, article I, section 19 and former Code of Civil Procedure section 1249, the owner of condemned property must be paid the market value of the property. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 586, p. 3882.) "Market value is the price that would be paid by a willing purchaser from a willing seller purchasing with a full knowledge of all the uses and purposes for which the property is reasonably adapted." (*City of Daly City* v. *Smith* (1952) 110 Cal.App.2d 524, 531 [243 P.2d 46].)

■ In determining the market value the relevant factors include all uses to which the property is adapted or available and the highest and most profitable use to which the property might be put in the reasonably near future, to the extent that the probability of such a prospective use affects the market value. (*People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179].) Existing zoning ordinances bear on the availability of land for a particular use. (*Long Beach City H. S. Dist.* v. *Stewart* (1947) 30 Cal.2d 763, 766 [185 P.2d 585, 173 A.L.R. 249].) ■ A jury should consider all those factors, including lawful legislative and administrative restrictions on property,

which a buyer would take into consideration in arriving at the fair market value. (*South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 982 [133 Cal.Rptr. 166].) "Where there is a reasonable probability that zoning restrictions will be altered in the near future, the jury should consider not only those uses currently permitted, but also other uses to which the property could be devoted in the event of such a change." (*People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].)

■ However, where the land use regulation is unconstitutional, either because it is unrelated to a permissible governmental objective and aimed solely at depressing land values or where the regulation has some other constitutional infirmity, it is not admissible evidence of value except in a circumstance not here applicable. (See *People* ex rel. *Dept. of Pub. Wks.* v. *Southern Pac. Trans. Co.* (1973) 33 Cal.App.3d 960, 965 [109 Cal.Rptr. 525]; *City of La Mesa* v. *Tweed & Gambrell Mill* (1956) 146 Cal.App.2d 762, 772 [304 P.2d 803].)

■ In *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 253 [115 Cal.Rptr. 497, 524 P.2d 1281], the court summarized and listed the purposes of the Act.[1] "The Act declares that the coastal zone is a valuable resource belonging to all the people, that its permanent protection is a paramount concern to the citizens of the state, and that in order to protect this valuable resource it is necessary to study the coastal zone, prepare a comprehensive plan for its orderly, long-range conservation and management, and insure that any development which occurs in the permit area during the study and planning period will be consistent with the objectives of the Act. (Pub. Resources Code, § 27001.) The Commission is enjoined to submit such a plan to the Legislature by December 1, 1975. (Pub. Resources Code, §§ 27300, 27320.) Among the objectives of the coastal zone plan are the avoidance of irreversible and irretrievable commitments of coastal zone resources. (Pub. Resources Code, § 27302, subd. (d).) In order to assure that the purposes of the Act are not impaired during the period in which the plan is in the process of formulation, those who seek to perform any development within the permit area are, with certain exceptions, required to seek a permit from the Commission. (Pub. Resources Code, §§ 27400-27405.)" The court went on to uphold the permit requirement under the Act against the challenge that the Commission's denial of a permit constituted an

[1]The Act was added by an initiative measure approved November 7, 1972, and remained in effect until January 1, 1977. (See former Pub. Resources Code, § 27650.)

unconstitutional taking of property. In so doing, the court noted that "the present case [cannot] be distinguished in principle from numerous authorities upholding the validity of interim zoning ordinances." (12 Cal.3d at p. 254.) The court emphasized the importance of interim measures aimed at preservation of the status quo while a comprehensive plan was being developed. Subsequent to *State of California*, several Courts of Appeal have also upheld the validity of the Act against numerous attacks on constitutional grounds. (See *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833 [130 Cal.Rptr. 169]; *Reed* v. *California Coastal Zone Conservation Com.* (1975) 55 Cal.App.3d 889 [127 Cal.Rptr. 786]; *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306 [118 Cal.Rptr. 315].)

None of the above cases indicate that a purpose of the Act was to depress property values and thereby facilitate the public acquisition of coastal property.

Respondents assert that the Act merely imposes a set of land restrictions which ceased to exist 30 days after the jury returned its verdict in this case. ■ It is clear, however, that the Act was designed to provide a permanent regulatory mechanism for the permanent protection of the remaining natural and scenic resources of the coastal zone and for the orderly long-range conservation and management of those resources. The significance of the Act in terms of its effect upon coastal property values stemmed not only from the restrictions of the interim regulations on immediate plans for development, but also from the Act's implications for future development. Certainly, the Act reflected a serious concern with and commitment to the protection of the coastal zone. ■ The Act required the Commission to prepare and submit a plan to the Legislature for the orderly development of the coast. Any purchaser of coastal property in March of 1975 would have considered the probability of strict future regulation of coastal development.

Respondents argue that the temporary nature of the Act is a basis for distinguishing the present case from those holding that zoning measures may be considered in determining the market value of condemned property. This argument is unpersuasive. As indicated, the Act had permanent implications for the value of coastal land. Even assuming the Act to be purely temporary in nature, its short life is relevant only in determining the *extent* of its effect on property values, not the *admissibil-*

*ity* of evidence of the effect of the Act. (Cf. *People* ex rel. *Dept. of Public Works* v. *Donovan, supra,* 57 Cal.2d at p. 352.)

There is no basis on which to distinguish the interim regulations and policies of the Commission from other legislative and administrative measures which may influence the market value of property. It would be incongruous to conclude that although there is no constitutional necessity to compensate property owners for the diminution of the value of their land if retained or sold to private purchasers, there is such a necessity for compensation where the state condemns the property. The adoption of such a position would mean that the owners would receive a higher price in a condemnation proceeding than in a private sale. Such a result would represent the abandonment of the determination of compensation with reference to the market value.

We conclude that the evidence of the effect of the Commission's regulations on the value of the property was relevant to the determination of the value of respondents' property.

■ The trial court's error in limiting the admission of evidence regarding the effect of the Act and in instructing the jury was clearly prejudicial. Although appellant's appraiser testified that he attributed no substantial effect on the value of the property to the Commission's regulations, it is clear that respondents' appraisers set their valuations in large part on the exclusion of respondents' property from those regulations. Respondents took full advantage of the court's ruling in presenting the testimony of their witnesses. Earl Metcalfe, the appraiser for respondents, testified that the property was worth $490,000, and indicated that his valuation was based primarily on the fact that "the coastal lands of California which are free of the hindrance of the Coastal Commission and available for development are so scarce that they are going up at very rapid rates of increase in price." Talleur's testimony that the land was worth $510,000 was apparently also based on the court's ruling. The verdict of the jury as to the value of the property was approximately midway between appellant's appraisal ($187,000) and those of respondents ($490,000 and $510,000), indicating that the jury relied in part on the testimony of respondents' two appraisers. Furthermore, in their closing argument respondents emphasized the property's exemption from the Commission's jurisdiction, stating that "there is not

one parcel of property in the State of California on the coast but this one that must be valued as if the Coastal Commission did not exist."

Judgment is reversed. Respondents to recover their costs on appeal.

Feinberg, J., and Abbe, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 9, 1978.

---

*Assigned by the Chairperson of the Judicial Council.