**UNITED STATES of America, Plaintiff,**

**v.**

**3.95 ACRES OF LAND, MORE OR LESS, SITUATED IN the CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, Cliffside Properties, Inc., a California Corporation, et al., Defendants.**

**No. C–75–0862–WAI.**

United States District Court,
N. D. California.

May 1, 1979.

Francis B. Boone, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Robert S. Webber, Burlingame, Cal., for defendants.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

This is an action in condemnation by plaintiff United States to acquire defendant's land as part of the Golden Gate National Recreation Area, pursuant to 16 U.S.C. § 460 *et seq.* and 40 U.S.C. § 257. The subject property, known generally as the Sutro Baths, consists of approximately 4.45 acres [1] overlooking the Pacific Ocean on the western edge of San Francisco, California, and is owned by defendant Cliffside Properties, a California corporation. The land is unimproved; having remained in that state since the bath house and accompanying buildings were destroyed by fire in 1966.

Defendant moves for an order establishing that the subject property shall be valued as of a valuation date at the time of trial herein but in a physical and legal condition as it existed prior to October 27, 1972, the date on which acquisition was authorized by Act of Congress. Specifically, such a valuation date would exempt the subject property from the jurisdiction and effect of California's coastal zone management program, as set forth in the California Coastal Zone Conservation Act, established by California Proposition 20, Initiative of November 7, 1972, and later designated as the California Coastal Act of 1976, Cal.Pub. Res.Code, §§ 3000 *et seq.* ("Act").

It is the government's contention that the valid zoning restrictions imposed by the Act [2] are properly to be considered by the jury in reaching a valuation figure. It is the defendant's contention that it would be inequitable and punitive to permit the Act's restrictions to depreciate the fair market value when the lateness of the acquisition was responsible for subjecting that property to additional controls which would not otherwise have been in existence if the property had not been held in limbo since the first announcement of the intention to acquire it.

As will be explained, the facts do not support defendant's contention that it was the government's dilatoriness, if any, in condemning the property that caused the decline in value and, therefore, the motion is denied.

Beginning as early as 1969, the City of San Francisco, together with interested individuals and Congressional representatives started considering the possibility of acquiring the subject property. These efforts resulted in the passage of the Golden Gate National Recreation Area Act ("GGNRA Act") which became effective on October 27, 1972. That Congressional mandate authorized the Secretary of the Interior to acquire, preserve and administer certain areas of Marin and San Francisco Counties, California, "to provide for the maintenance of needed recreational open space . .". Pub.L.No. 92–589, § 1, 86 Stat. 1299, 92d Cong., 2d Sess. (1972). Defendant's land is among the parcels to be acquired.[3]

Following the Congressional enactment, defendant requested an immediate appraisal of the property and the commencement of an action in eminent domain. However, no negotiations were instituted until May 3, 1974, when the National Park Service sent a letter to the property owner stating that they were ready to commence negotiations. An offer by the government followed, but was rejected as being too low.

During this interim period, specifically eleven days after the GGNRA Act became

---

1. As the above caption indicates, the acreage was originally set at 3.95 acres. Subsequent amendment has established the area as approximately 4.45 acres.

2. The Act has been held to be a valid zoning measure. *Avco Community Developers, Inc. v. South Coast Regional Commission*, 17 Cal.3d 785, 132 Cal.Rptr. 386, 553 P.2d 546 (1976).

   In the case of *People ex rel. State Public Works Board v. Talleur*, 79 Cal.App.3d 690, 145 Cal.Rptr. 150 (1978), the California Court of Appeals held that evidence as to the effect of the coastal zoning commission's regulations on the fair market value of the property was properly admissible.

3. Litigation involving the adjacent tract of land, Cliff House, also spawned questions concerning the proper valuation. See, *United States v. 3.66 Acres of Land (Cliff House)*, 426 F.Supp. 533 (N.D.Cal.1977).

effective, the People of the State of California voted to pass the coastal initiative which established more restrictive zoning requirements for property bounded by the Pacific Ocean.

On March 24, 1975, defendant filed a complaint in inverse condemnation before the United States Court of Claims. Five weeks later, on May 1, 1975, the United States responded by filing the present complaint in condemnation.

Defendant argues that the announcement by the City of San Francisco, *inter alia*, effectively "froze" the usefulness and marketability of its property. Thus, the valuation date should be a point in time prior to October 27, 1972. Based on this reasoning, defendant argues that the depressing impact of Proposition 20 should not be taken into consideration. Defendant acknowledges at the outset, however, that no case authority exists to support its reasoning.

The general rule governing the time of valuation of property in condemnation actions is the date of taking or transfer of title; here, the trial date. *Danforth v. United States*, 308 U.S. 271, 283–285, 60 S.Ct. 231, 84 L.Ed. 240 (1939); *United States v. 3.66 Acres of Land (Cliff House)*, 426 F.Supp. 533 (N.D.Cal.1977). Generally, neither the enactment of legislation authorizing the taking, nor the announcement of the intent to acquire, constitute a taking for valuation date purposes. *Danforth, supra; Reservation Eleven Associates v. District of Columbia*, 136 U.S.App.D.C. 311, 420 F.2d 153, 157–158 (1969).

Defendant relies heavily on federal and state cases which establish a narrow exception to the above-stated general rule. Those cases permit the court to fix an earlier valuation date when the government's dilatory actions, be they intentional delays in proceeding to condemn or intentional public disclosures, impact in such a way as to depress the fair market value of the property. Under such circumstances, the courts have been receptive to the equities favoring the landowner. *See, e. g., Drakes Bay Land Company v. United States*, 424 F.2d 574, 191 Ct.Cl. 389 (1970); and, *Klopping v. City of Whittier*, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972).

Those cases do not assist defendant. Here, it was not the government's dilatoriness, if any, in filing its complaint in condemnation which caused the decline in value of defendant's property, but rather, the independent passage of the California Coastal Initiative of November 7, 1972 by the People of the State of California. There is no causal participation on the part of the federal government, and thus, no equities upon which to base a different date of valuation.

Accordingly, IT IS HEREBY ORDERED that defendant's motion is denied. The valuation date will be the date of trial herein and such valuation will take into consideration the effects of the coastal zoning requirements to the extent permitted by the Federal Rules of Evidence.