[Civ. No. 52799. First Dist., Div. One. Aug. 17, 1982.]

REDEVELOPMENT AGENCY OF THE CITY OF CONCORD,
Plaintiff and Appellant, v.
CONTRA COSTA THEATRE, INC., Defendant and Appellant.

COUNSEL

Goldfarb & Lipman, Steven H. Goldfarb, Barry R. Lipman and Lee C. Rosenthal for Plaintiff and Appellant.

Angell, Holmes & Lea and Samuel L. Holmes for Defendant and Appellant.

OPINION

**NEWSOM, J.**—Before us are cross-appeals from a jury verdict and judgment in an eminent domain action instituted by the Redevelopment Agency of the City of Concord (respondent) to condemn a leasehold interest owned by Contra Costa Theatre, Inc. (appellant).

During the course of the proceedings, appellant claimed that condemnation damages should include the diminution in value of his property interest caused by respondent's improper precondemnation denial of his application for a use permit, under the authority of *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]—so-called "*Klopping* damages." The lower court ordered a bifurcated trial in which evidence and instructions relevant to the claim of unlawful precondemnation conduct were withheld from the jury. The *Klopping* damages claim was heard by the trial court alone. Thereafter, the jury determined the value of appellant's leasehold interest, and thus the amount of damages to be awarded in the eminent domain action, according to the highest and best use of the property.

The jury awarded appellant damages for the market value of the leasehold interest, including loss of goodwill. The trial court then denied appellant any further compensation for *Klopping* damages. Appellant objects to both the trial court's judgment and the jury verdict. Respondent appeals from the jury verdict only.

In summary form, the following evidence was presented during the bifurcated proceeding.

Appellant was the owner of a leasehold interest in a 14-acre parcel located in the City of Concord, on which it operated a single-screen outdoor movie theatre. The leasehold interest consisted of a 30-year lease.

Appellant drafted plans for the addition of three additional screens on the property, and submitted an application for permission to operate a multiscreen theatre in April 1976. When the plan was informally proposed to the commission in 1974, appellant was advised that it presented "no problems." However, the commission voiced a negative response to the application soon after it was filed.

Coincidentally with the filing of appellant's application, the commission was preparing a "General Plan" which did not provide for appellant's contemplated use of the property. An "Amended Redevelopment Plan" was also being considered and city officials were negotiating with a developer with a view toward municipal acquisition of appellant's leasehold interest by condemnation, resale of the property to the developer, and its eventual development in accordance with the redevelopment plan.

On September 7, 1977, appellant's application for installation of three additional outdoor theatre screens was heard and denied by the commission for the stated reason that the proposed expanded use was "contrary to the goals of the General Plan, Central Area Plan, and Redevelopment Plan." Testimony relevant to the issue of *Klopping* damages, heard by the trial court alone, revealed, in the aggregate, only that city officials, including commission employees, were aware of the contemplated condemnation and negotiations with the developer at the time the use permit was denied.

Approximately six months after the commission's formal denial of the application, the agency valued the leasehold interest and initiated the present condemnation action.

Appellant argues that the trial court erred when it bifurcated the trial and excluded all evidence relevant to the issue of *Klopping* damages from the consideration of the jury. Appellant's position is that the issue of damages resulting from improper precondemnation conduct is one for the jury rather than the trial court. Appellant relies upon the ruling

in *Klopping* v. *City of Whittier, supra*, 8 Cal.3d 39, where the California Supreme Court announced that, "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated." (*Id.*, at pp. 51-52.) The court concluded: "Accordingly ... a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (*Id.*, at p. 52.)

It is also now settled that liability for unlawful precondemnation activities may be considered a part of a single eminent domain proceeding. (*People* ex rel. *Dept. Pub. Wks.* v. *Southern Pacific Trans. Co.* (1973) 33 Cal.App.3d 960, 965 [109 Cal.Rptr. 525].) In *Klopping*, our high court held that a condemner could be liable in either inverse or direct condemnation for diminution in market value resulting from unreasonable precondemnation conduct. ■ ■■■ ■ ■■■ (*Klopping, supra*, 8 Cal.3d at p. 58; *City of Los Angeles* v. *Monahan* (1976) 55 Cal.App.3d 846, 852 [127 Cal.Rptr. 763];[1] *People* ex rel. *Dept. Pub. Wks.* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 353 [153 Cal.Rptr. 895]; *Richmond Redevelopment Agency* v. *Western Title Guaranty Co.* (1975) 48 Cal.App.3d 343, 350 [122 Cal. Rptr. 434].)[2] Thus, *Klopping* damages may be sought in an eminent domain proceeding; a separate claim is not required.

■ However, the threshold question of liability for unreasonable precondemnation conduct is to be determined by the court, with the issue of the *amount* of damages to be thereafter submitted to the jury only upon a sufficient showing of liability by the condemnee. (*City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625, 632-633 [127

---

[1]An inverse condemnation action is the corrollary of a suit for eminent domain; the significant difference between the two is that in the former the property owner commences the litigation for compensatory damages, while in the latter the public entity takes the initiative to condemn the property.

[2]The proper procedural mechanism by which a condemnee may seek damages for unreasonable precondemnation conduct is by way of an answer to an eminent domain complaint rather than by means of a cross-complaint. (*Ibid.*)

Cal.Rptr. 417].) If *liability* for unlawful precondemnation conduct is not established, the trial court may exclude proffered evidence of alleged resulting damages from the jury. (*Ibid.*)

We accordingly find no error in the bifurcated proceeding employed by the trial court in this case. A bifurcated trial is commonly used in eminent domain and inverse condemnation actions (*Orpheum Bldg. Co. v. San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 868 [146 Cal.Rptr. 5]), where "all issues except the sole issue relating to compensation, are to be tried by the court, ..." (*People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]; *County of San Diego* v. *Miller* (1980) 102 Cal.App.3d 424, 433 [162 Cal.Rptr. 480].) "The right to a jury trial in condemnation proceedings goes *only* to the *amount* of compensation." (*People* ex rel. *Dept. of Water Resources* v. *Gianni* (1972) 29 Cal.App.3d 151, 157 [105 Cal.Rptr. 248], italics added.)

 We further find ample support in the record for the trial court's conclusion that appellant failed to establish unlawful precondemnation conduct under the guidelines established by *Klopping* and its successor cases.

The parameters of *Klopping* are yet unsettled, and "must be developed and refined on a case-by-case basis." (*City of Los Angeles* v. *Waller* (1979) 90 Cal.App.3d 766, 779 [154 Cal.Rptr. 12]), but it is established that mere denial of a use permit prior to condemnation is not compensable in money damages under its authority.

In *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111], the city denied plaintiff's application for a building permit after adoption of general plan, and plaintiff thereafter brought declaratory relief and mandamus actions, along with a *Klopping* inverse condemnation suit. (*Id.*, at p. 119.) Plaintiff alleged a "scheme" to take its land without compensation, and that "in furtherance of that 'scheme' the city denied plaintiff a permit ... for the purpose of 'extorting' plaintiff's land." (*Id.*, at p. 127.) The court found no taking of property, and further concluded: "Nor is a cause of action in inverse condemnation stated for the denial of a building permit. The gravamen of plaintiff's complaint is that the city refused to issue the permit unless plaintiff complied with an assertedly invalid condition. The appropriate method by which to consider such a claim is by a proceeding in mandamus under section 1094.5 of the Code of Civil Procedure. (See *Gong* v. *City of Fremont, supra*, 250 Cal.App.2d 568, 575;

*Mid-way Cabinet etc. Mfg.* v. *County of San Joaquin* (1967) 257 Cal. App.2d 181, 191 ....)" (*Id.*, at p. 128.)

In *City of Walnut Creek* v. *Leadership Housing Systems, Inc.* (1977) 73 Cal.App.3d 611 [140 Cal.Rptr. 690], a claim for *Klopping* damages was based upon the city's denial of property development permits during the period in which the land developer held an option on property condemned soon thereafter. Relying on *Selby*, this court rejected the inverse condemnation action with the following explanation: "A petition for writ of mandate, not inverse condemnation or an action for damages, is the appropriate remedy for abuse of discretion in refusing a permit." (*Id.*, at p. 621; see also *Briggs* v. *State of California* ex rel. *Dept. Parks & Recreation* (1979) 98 Cal.App.3d 190, 202-203 [159 Cal.Rptr. 390].)

The same rule has been applied to claims of improper precondemnation conduct based upon denial of a request for rezoning of subsequently condemned property. In *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25] [affd. 447 U.S. 255 (65 L.Ed.2d 106, 100 S.Ct. 2138)], the California Supreme Court affirmed a judgment which sustained a demurrer to a cause of action which sought *Klopping* damages for a downzoning of land as a residential planned development and open space zone which, according to the inverse condemnation pleading, constituted a taking.

In the aftermath of *Agins* and *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d 110, an inverse condemnation action for damages caused by the unreasonable precondemnation conduct of the condemning authority is still available to an aggrieved condemnee under the guidelines of *Klopping*. (*Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934, 951-952 [162 Cal.Rptr. 210].) But, it is now clear that compelling public policy considerations dictate use of administrative mandamus as the sole remedy where the challenged improper conduct consists solely of zoning or use permit denial. (*Toso, supra,* at pp. 949-950; *Briggs* v. *State of California* ex rel. *Dept. Parks & Recreation, supra,* 98 Cal.App.3d 190, 202-203; *Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 352 [157 Cal.Rptr. 791].)

Here, the evidence submitted to the trial court showed no more than a denial of appellant's application for a use permit because of a proposed use of the subject property inconsistent with the recently drafted

city plans for the area. No conspiracy among city officials was established; no intent to diminish the value of appellant's leasehold interest is revealed by the evidence.

In our view, the mere coincidence that general and redevelopment plans had been drafted and negotiations with the developer initiated at the time appellant applied for and was denied a use permit fails to support appellant's claim that the permit denial decision was made for the purpose of lowering the value of appellant's property interest, thus to facilitate its acquisition by respondent.

■ ■■■ ■ We conclude that substantial evidence supports the trial court's finding that unlawful precondemnation conduct (*Toso v. City of Santa Barbara, supra*, 101 Cal.App.3d 934, 955-956; *City of Los Angeles v. Waller* (1979) 90 Cal.App.3d 766, 779 [154 Cal.Rptr. 12]), justifying submission of the issue of *Klopping damages* to the jury, was not established.[3] (*City of Los Angeles v. Lowensohn, supra*, 54 Cal.App.3d 625, 636.)[4]

■ Appellant's final contention is that the trial court erred in excluding evidence of the value of the leasehold interest as a flea market or "swap meet" during jury trial.

The record reveals that the lease by which appellant held its interest in the property made no provision for the use of the land as a flea market; by its terms the lease allowed use solely as a drive-in theatre. Historically, appellant had used the premises for a flea market with the oral permission, or at least the acquiesence, of the property owner. Appellant discontinued such use of the property prior to these proceedings and thereafter the underlying property interest was purchased by the developer (to whom the city intended to sell the condemned leasehold interest).

[3]Appellant protests that the trial court's "summary disposition" of the *Klopping* damages issue amounted to a nonsuit, although not labeled as such. This was error, appellant argues, since sufficient evidence was presented to overcome a nonsuit. This argument ignores the rule that Klopping *liability* is an issue for the trial court, not the jury (*City of Los Angeles v. Lowensohn, supra*, 54 Cal.App.3d 625, 636), so that the substantial evidence test is the appropriate standard of appellate review. (*City of Los Angeles v. Waller, supra*, 90 Cal.App.3d 766, 779.)

[4]This conclusion makes it unnecessary for us to discuss additional arguments presented by respondent in support of the trial court's ruling. For the same reason we find no reason to resolve appellant's argument that *Klopping* damages should include loss of business goodwill due to unlawful precondemnation conduct.

Respondent maintains that appellant's use of the property as a flea market was a mere license, uncompensable as a property interest in an eminent domain proceeding. Respondent notes that appellant had no right under the lease to operate a flea market on the property at the time of the condemnation, and no evidence of future approval of such a use was offered by appellant.

Appellant's contention necessitates a discussion of the rules which apply to the determination of "just compensation" in eminent domain proceedings.

■ It is a basic premise that just compensation is measured by the damage to the condemnee—what the property owner has lost—rather than the benefit to the condemner. (*People* ex rel. *Dept. of Transportation* v. *Southern Pac. Transportation Co.* (1978) 84 Cal.App.3d 315, 324 [148 Cal.Rptr. 535]; *People* ex rel. *Dept. Pub. Wks.* v. *Southern Pac. Trans. Co.* (1973) 33 Cal.App.3d 960, 966 [109 Cal.Rptr. 525].) "The principle sought to be achieved by the concept of just compensation is to reimburse the owner for the property interest taken and to place the owner in as good a position pecuniarily as if the property had not been taken." (*People* ex rel. *Dept. of Transportation, supra*, 84 Cal.App.3d at p. 324.)

"Under the California Constitution, article I, section 19 and former Code of Civil Procedure section 1249, the owner of condemned property must be paid the market value of the property. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 586, p. 3882.) 'Market value is the price that would be paid by a willing purchaser from a willing seller purchasing with a full knowledge of all the uses and purposes for which the property is reasonably adapted.' [Citation.] [¶] In determining the market value the relevant factors include all uses to which the property is adapted or available and the *highest* and *most profitable use* to which the property might be put in the reasonably near future, to the extent that the probability of such a prospective use affects the market value. [Citation.]" (*People* ex rel. *State Public Works Bd.* v. *Talleur* (1978) 79 Cal.App.3d 690, 695 [145 Cal.Rptr. 150], italics added.)

■ Appellant insists that the "highest and most profitable use" to which its leasehold interest might be put in the future included operation of a profitable flea market or "swap meet" on the premises. While the lease did not permit such use of the property, the trial court allowed

appellant an opportunity to show oral amendment of the lease, but did not otherwise permit evidence of property use except as an outdoor theatre to reach the jury. No oral amendment of the lease was established by appellant, and so further evidence of flea market use was excluded.

■ It is well-settled that where, due to zoning or other use restrictions, condemned property is not presently available for use to which it is otherwise geographically and economically adaptable, the condemnee is entitled to show a "reasonable probability" of zoning or use changes in the near future and thus to establish such use as the highest and best use of the property. (*City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 867 [135 Cal.Rptr. 647, 558 P.2d 545].) The burden of establishing a "reasonable probability" of a change in allowed use is on the landowner, and the evidence must at least meet the usual minimum evidentiary requirements: that which is purely speculative, wholly guesswork and conjectural, is inadmissible. (*City of Los Angeles* v. *Decker, supra*, at p. 865; *People* ex rel. *Dept. Pub. Wks.* v. *Arthofer* (1966) 245 Cal.App.2d 454, 462-463 [54 Cal.Rptr. 878].)

"[T]he determination as to whether or not there is a reasonable probability of a [use] change is ordinarily a question of fact for the jury." (*People* ex rel. *Dept. Pub. Wks.* v. *Arthofer, supra*, 245 Cal.App.2d 454, 467.) As explained in *People* ex rel. *State Public Works Bd.* v. *Talleur, supra*, 79 Cal.App.3d 690, 696: "'Where there is a reasonable probability that [use] restrictions will be altered in the near future, the jury should consider not only those uses currently permitted, but also other uses to which the property could be devoted in the event of such a change.'" (See also *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 353 [19 Cal.Rptr. 473, 369 P.2d 1].)

■ The trial court's evidentiary ruling initially permitted appellant to present evidence that future use of the property as a flea market would have been approved by the lessor. Appellant offered testimony which revealed that its lessor had, in the past, permitted a flea market to be operated on the premises, and received a commission from appellant for the privilege granted. But, appellant's expert was prohibited from offering opinion evidence of the value of the property as a flea market.

We find no prejudicial error in the trial court's evidentiary ruling. Even if we were to characterize appellant's proffered testimony as meeting minimum evidentiary requirements, we would find its exclusion harmless. Given the ownership of the underlying fee interest by the de-

veloper and the failure of appellant to show amendment of the lease or other express permission to expand the permissible use of the condemned property, our view is that the jury plainly would not have reached a verdict more favorable to appellant had the evidence of increased value as a flea market been admitted. (*Garden Grove School Dist. v. Hendler* (1965) 63 Cal.2d 141, 144 [45 Cal.Rptr. 313, 403 P.2d 721].)

Respondent raises a single question in its appeal from the jury verdict: did the trial court err in permitting appellant to present evidence of a reasonable probability that a use permit for a multiscreen theatre would have been granted, thereby necessitating a valuation of appellant's leasehold interest based upon such use?

Respondent acknowledges the rule that the fair market value of condemned land must include a higher and better use of the property where the condemnee establishes a "reasonable probability" that such use would be permitted by the city. (*Long Beach City H. S. Dist.* v. *Stewart* (1947) 30 Cal.2d 763, 768-769 [185 P.2d 585, 173 A.L.R. 249].) Still, respondent complains that the commission's denial of appellant's application for a use permit only six months prior to initiation of the present eminent domain proceedings, and the absence of any showing by appellant of "changed circumstances," rendered the evidence of "reasonable probability" offered by appellant—in the form of expert testimony—so speculative as to be inadmissible.[5]

Admission of such evidence, argues respondent, permitted the condemnee to present unsubstantiated and completely speculative testimony on the reasonable probability issue which implied to the jury that appellant's use permit application was denied for improper reasons.

Respondent also claims that the error was prejudicial. The jury ultimately found no reasonable probability of the use of the property for a multiple-screen theatre, but awarded appellant compensation of $750,000—an amount approximately $600,000 greater than the value of a single-screen theatre according to respondent's experts, and greater even than the estimated value placed upon the use of the leasehold in-

---

[5]According to appellant, its experts also considered the improper precondemnation conduct-permit denial for the purpose of depressing the value of the property—in arriving at the conclusion that permit approval was reasonably probable. Appellant suggests that its experts were improperly prevented from so testifying to the jury. (See p. 77 *supra*.)

terest as a single-screen theatre by appellant's appraisers. The award was less than the appraised value of the property as a multiple-screen theatre—$2.25 million—leading respondent to suggest that the jury verdict was a compromise award, based at least partially upon the evidence of reasonable probability which was erroneously admitted.

While a jury should consider lawful legislative and administrative restrictions on property (*People* ex rel. *State Pub. Works Bd. v. Talleur, supra,* 79 Cal.App.3d 690, 695), appellant was entitled to show a "reasonable probability" of a use permit change in the near future as the "highest and best use" of the property. (*City of Los Angeles v. Decker, supra,* 18 Cal.3d 860, 867-868.) Thus, it is entirely proper for the jury to consider not only those uses currently permitted, but also evidence of additional uses to which the property could be devoted in the event of an authorized change in use. (*People* ex rel. *Dept. of Public Works v. Donovan, supra,* 57 Cal.2d 346, 352.)

In condemnation proceedings, the trial court is vested with considerable judicial discretion in admitting or rejecting evidence of value. (*People* ex rel. *Dept. Pub. Wks. v. Arthofer, supra,* 245 Cal.App.2d 454, 463.) Only evidence of a reasonable probability which is "'purely speculative, wholly guess work and conjectural, is inadmissible.'" (*City of Los Angeles v. Decker, supra,* 18 Cal.3d 860, 868; see also *Ellena v. State of California* (1977) 69 Cal.App.3d 245, 256 [138 Cal.Rptr. 110].)[6]

Here, the testimony of appellant's experts was based primarily on customary practices in similar areas and other proper, albeit general, considerations. Despite the fact that appellant's experts apparently failed to thoroughly investigate or consider the conflict between appellant's proposed use of the property and the particular land use plans in the City of Concord, such testimony did not, we conclude, descend to the level of mere speculation or guesswork. And in the absence of a clear abuse of discretion, we decline to disturb the trial court's admission of expert testimony that the property would increase in value as a

---

[6]In addition, as expressed in *People* ex rel. *Dept. of Pub. Wks. v. Arthofer, supra,* 245 Cal.App.2d 454, 464: "The value of condemned property may be proved through a properly qualified witness by eliciting facts relating to his examination of the land and area, and any facts showing knowledge of the subject and capacity to express an opinion. [Citation.] 'An expert may detail the facts upon which his opinions or conclusions are based, even though his knowledge is gained from inadmissible or inaccurate sources.' [Citations.]"

multiscreen theatre. (*People* ex rel. *Dept. of Public Wks.* v. *Arthofer, supra*, 245 Cal.App.2d 454, 465.) The opinion evidence may have been entitled to only slight weight, as the jury's special finding indicates it was, but we conclude that the trial court did not abuse its discretion by admitting it.

The judgment is affirmed. Appellant to bear costs on appeal.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied September 15, 1982, and the petition of defendant and appellant for a hearing by the Supreme Court was denied November 24, 1982. Newman, J., did not participate therein.