[No. D001698. Fourth Dist., Div. One. Aug. 7, 1986.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
MARY E. BRESSI, Defendant and Appellant.

**COUNSEL**

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Bruce W. Beach, Deputy County Counsel, for Plaintiff and Appellant.

Richard L. Franck, Leslie W. Mullins and Parker, Milliken, Clark, O'Hara & Samuelian for Defendant and Appellant.

**OPINION**

**WIENER, J.—** ██ The County of San Diego (County) filed this eminent domain action against Mary E. Bressi to acquire avigation easements off the east end of Palomar Airport in Carlsbad, California.[1] The jury awarded Bressi $52,158 to compensate her for the value of the easements plus $27,500 in severance damages. The court granted Bressi's new trial motion on grounds the jury award was inadequate, the verdict was not supported by the evidence, and the court erred in admitting evidence of nonbinding promises and plans of the County of San Diego.

The County appeals from the new trial order asserting there is no factual or legal basis for the court's findings. Bressi cross-appeals from the judgment and from the new trial order to the extent the order permits the County to introduce evidence on retrial of "what will be the likely future development

---

[1]Congress recognizes freedom of transit in air through the navigable airspace of the United States. (49 U.S.C. § 1304.) Navigable airspace includes airspace needed to insure safety in takeoff and landing of aircraft. (49 U.S.C. § 1301.) Avigation easements are required only when the noise, vibration, fumes, fuel particles and inconvenience caused by low-flying aircraft interfere with the use and enjoyment of the underlying property to the extent it amounts to a taking. (See *United States* v. *Brondum* (5th Cir. 1959) 272 F.2d 642, 644-645; *City of Oakland* v. *Nutter* (1970) 13 Cal.App.3d 752, 763, fn. 13 [92 Cal.Rptr. 347].)

of the airport." We first review the County's appeal and decide there is sufficient evidence to support the court's ruling. We then examine the evidentiary questions in Bressi's cross-appeal and conclude the County may not introduce evidence which in any way limits the scope of the taking as defined by the County in the resolution of necessity. We therefore modify the new trial order to more accurately reflect the views expressed in this opinion. Except as modified we affirm the order and dismiss Bressi's protective cross-appeal from the judgment.

## THE COUNTY'S APPEAL

### I

Bressi owns two parcels of land at the intersection of Palomar Airport Road and El Camino Real in Carlsbad: a 571-acre parcel at the southeast corner and a .8-acre parcel at the northeast corner. Although most of the Bressi ranch is zoned for large-tract agricultural or residential use and has been used for agricultural purposes since 1942, 12 acres at the intersection are currently zoned for commercial use. The intersection is located about 2,000 feet east of, and in almost direct alignment with, the runway at Palomar Airport.

The County seeks avigation easements 40 to 70 feet above the .8-acre parcel and an 8.5-acre portion of the 571-acre parcel. The County's complaint alleges the resolution of necessity, specifying the rights and choses in action included in the taking:

"TOGETHER with the continuing right to cause or allow in all the airspace above the surface of Grantor's [Bressi's] property such noise, vibrations, fumes, dust, fuel particles, and other effects as may be caused by or result from the operation of aircraft; it being understood and agreed that Grantee [County] intends to maintain and develop adjacent airport in such manner that said airport and the easement granted herein will be used at all times and by every type of aircraft which is now in existence or which may be developed in the future for both commercial and noncommercial flights; and Grantor, for Grantor and the successors in interest and assigns of Grantor, does hereby fully waive and release any right or cause of action which they or any of them now have or may have in the future against Grantee, its successors and assigns, on account of or arising out of such noise, vibrations, fumes, dust, fuel particles, and other effects heretofore and hereafter caused by the operation of aircraft in said airspace.

". . . . . . . . . . . . . . . . . . . . . .

*"The term 'aircraft' is defined for the purposes of this deed as any contrivance now known or hereafter invented, designed, or used for navigation or flight in air or space.*

". . . [T]he aforesaid covenants and agreements shall run with the land." (Italics supplied.)

The case was tried from January 19 to February 15, 1984. Using comparable sales, Thomas L. Roberts, Bressi's appraiser, determined that the property's total worth at its highest and best use was comprised of three zones of value: a 10-acre zone at the intersection of Palomar Airport Road and El Camino Real valued at $5 per square foot ($217,800 an acre); a 55-acre frontage area along Palomar Airport Road valued at $38,500 an acre; and a 506-acre mixed-use area valued at $22,000 an acre. In Roberts' judgment, the avigation easement reduces the value of the commercial corner by 50 percent because it precludes people-intensive land uses, a conclusion based in part upon analysis of noise, crash hazards, and land-use restrictions excerpted from the comprehensive land use plan for Palomar Airport. For similar reasons and because flights will render the highest portions of the property virtually undevelopable, he found that the taking of the easement will damage the frontage areas and the remaining commercial zone by 50–70 percent and the more distant mixed-use area by 10–25 percent, causing severance damages totalling $2,742,826. Finally, he determined that the sliver parcel, valued initially at $3 per square foot net of street dedications, was reduced in value by 75 percent through taking of the easement, and he thus valued the easement over that parcel at $35,480.

David D. Westcott, on behalf of the County, likewise determined that the Bressi property in its highest and best use was appropriately divided into three zones of value: a 184-acre planned industrial zone along Palomar Airport Road valued from comparable sales at $50,000 an acre, a 343-acre residential area valued at $23,000 an acre, and 44 acres of open space valued at $1,000 an acre. He did not consider the corner of the property at El Camino Real and Palomar Airport Road, where the easement was being taken, any more valuable than the other Palomar Airport frontage, notwithstanding the corner's present commercial zoning and the commercial use of other corners in the area, because the City of Carlsbad would ultimately control the development of that corner and would reportedly prevent commercial development on it by denying it street access. In Westcott's opinion, the easement will have no actual effect upon the Bressi property or its development and will simply impose a "slight cloud" on its title; he thus assigned it a nominal value of 10 percent on the 8.5 acres it covers, giving it a value of $42,965. For similar reasons, he concluded the easement over the .8 acre parcel was worth $500 and the rest of the property would suffer no severance damages.

The jury returned a special verdict which valued the avigation easement in the .8-acre parcel at $600, the avigation easement in the 8.5-acre parcel at $51,558, and awarded severance damages of $27,500. The valuation testimony and jury findings may be summarized as follows:

| | .8-Acre Parcel | 8.5-Acre Parcel | Severance Damages | Totals |
|---|---|---|---|---|
| Bressi: | $35,480 | $886,337 | $2,789,026 | $3,710,843 |
| County: | 500 | 42,965 | None | 43,500 |
| Jury Award: | 600 | 51,558 | 27,500 | 79,658 |

In granting the new trial order, the court outlined specific reasons for its conclusion there were inadequate damages and insufficient evidence to support the jury award:

"The Court after weighing the evidence felt that the evidence clearly demonstrated that the highest and best use of the 8.5 acre corner parcel of the Bressi property was commercial. The only evidence that the ultimate and best use of the property was not commercial in the before condition was the testimony of the Carlsbad land use planner that Carlsbad did not want additional commercial corners in the area. The property directly across the street was zoned commercial. Almost every corner in the area where there is a major intersection is zoned commercial. Clearly the weight of the evidence was that the property's highest and best use was commercial in the before condition. After weighing the testimony of Mr. Roberts and that of the expert for the County, Mr. Wescott, the Court felt that Mr. Westcott's testimony was not credible. The weight of the evidence was that the avigation easement amounted to at least a fifty percent taking of this corner. A taking in this amount should have amounted to damages for this corner parcel alone in excess of $400,000.00. The clear weight of the evidence was that the 8.5 parcel, in the after condition, will only be suitable for storage facilities.

". . . Weighing all the evidence the Court felt the evidence was insufficient to support the award for compensation for the taking on the 8.5 parcel and should have been in excess of $400,000.00. The clear weight of the evidence was that this property in the before condition in its highest and best use was in excess of $800,000.00."

II

▮ The County challenges the new trial order on grounds there is no substantial evidence to support the court's conclusion that in the before condition the highest and best use of the 8.5-acre parcel was commercial,

in the after condition the highest and best use was storage/warehousing, and damages exceeded $400,000. The resolution of this issue is governed by well-recognized principles of appellate review.

The court may not grant a new trial on grounds of insufficiency of the evidence or inadequate damages ". . . unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657.) The new trial order ". . . shall be reversed as to such ground[s] only if there is no substantial basis in the record for any of [the court's specified] reasons." (*Ibid.*)

■ The presumptions on appeal are in favor of the order. (*Brandelius* v. *City & County of S.F.* (1957) 47 Cal.2d 729, 733 [306 P.2d 432]; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 135, p. 538.) The trial court's exercise of discretion in ruling on the new trial motion may be disturbed only where ". . . a manifest and unmistakable abuse of discretion clearly appears." (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].) The admonition is particularly compelling when discretion is exercised in favor of granting the new trial. (*Candido* v. *Huitt* (1984) 151 Cal.App.3d 918, 923 [199 Cal.Rptr. 41].) Furthermore, an abuse of discretion cannot be found in cases such as this where the evidence is in conflict and a verdict for the moving party could have been reached under the theory expressed in the order for a new trial. (*Jones* v. *Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 711 [106 Cal.Rptr. 28, 505 P.2d 220].) ■ Here the trial court's findings are amply supported by the record.

■ ■ ■ ■ Roberts' testimony based on comparable sales of nearby vacant commercial lots supports the court's conclusion that Bressi's 8.5-acre parcel was worth in excess of $800,000 before the taking.[2] Westcott, the County's valuation expert, agreed that raw commercial land in the area was worth from $5 to $8 per square foot and that the Bressi property would be worth that much if it could be developed commercially with adequate access. The court's finding that the highest and best use before the taking was commercial is supported by the present commercial zoning of the

---

[2]At trial the court overruled the County's objection that Roberts, Bressi's valuation expert, was not qualified based on his investigation to express an opinion as to the reasonable probability Carlsbad would zone the Bressi corner for commercial use. (See *People* ex rel. *Dept. Pub. Wks.* v. *Arthofer* (1966) 245 Cal.App.2d 454, 462-463 [54 Cal.Rptr. 878].) The County raises the issue again on appeal. "In the absence of a clear abuse of that discretion, the trial court's determination that a witness is or is not qualified to testify to the value of land sought to be appropriated will not be disturbed on appeal." (*Id.*, at p. 465.) We find no abuse of discretion based on this record.

property under the County, construction of a motel on County-owned land across the street, commercial uses at most major intersections in the area, and Roberts' opinion that existing zoning and present use of other corners in the neighborhood provided the best indication of the highest and best use of the Bressi corner.[3]

The court expressly found the County's contrary evidence "not credible." ▪ Because there is substantial evidence to support the court's valuation of Bressi's property before the taking, we need not consider evidence that Carlsbad's planning department opposed further commercial development at major city intersections. (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598 [207 Cal.Rptr. 728].) ▪ Carlsbad land use planner Holzmiller conceded this was just a staff recommendation subject to City Council approval, and "we don't ever try to predict the Council [because we've] been wrong too many times."

Substantial evidence also supports the court's finding that the avigation easement reduced the value of the 8.5-acre parcel by at least 50 percent because its use would be limited to storage and warehousing. Roberts testified the value of the property would be diminished by 50 percent and the property would be useable only for storage, warehousing and other uses involving low density due to the noise and crash hazards from low-flying aircraft. He based his opinion on land use restrictions recommended in the comprehensive land use plan for Palomar Airport, similar restrictions recommended in a 1981 Brown Field plan issued by the Airport Land Use Commission under the San Diego Association of Governments (SANDAG) within two months of the date of valuation, and use restrictions actually imposed upon property located at the other end of the Palomar Airport runway.

BRESSI'S CROSS-APPEAL

I

The evidentiary issues which form the basis of Bressi's cross-appeal[4] were raised in Bressi's motions before trial to limit evidence of future airport

---

[3]The jury was instructed and the parties do not dispute that "the property would, in the most reasonable probability, be developed under the City of Carlsbad general plan . . . ." However, there was conflicting evidence on the likelihood of Carlsbad maintaining the commercial zoning for the Bressi corner.

[4]The County also raises evidentiary matters in its appeal arguing there was no error in law in the admission at trial of evidence of the present and future operation of the airport or lawful legislative and administrative restrictions on airport use. The County also takes issue with the wording of the new trial order which restricts the introduction of evidence on retrial. For convenience we address the evidentiary questions under the heading of Bressi's cross-appeal.

operations. She argued the County was precluded from presenting evidence on future use of the avigation easements which would reduce the use described in the resolution of necessity passed by the Board of Supervisors. The court declined to make a specific ruling on Bressi's motion, but ordered the County not to mention future plans in its opening statement. The court stated the County could introduce evidence on past airport operation, operation on the date of value, and current operation to the date of trial. Evidence on future operations would be heard out of the presence of the jury and ruled on one subject at a time.

The issue of future airport operations arose again on cross-examination of Bressi's appraiser, Thomas L. Roberts. The County questioned Roberts on the comprehensive land use plan for Palomar Airport, prepared in 1974 and based on assumptions which forecast airport operations through 1990. At the urging of Bressi, the court reconsidered the motion to limit evidence regarding future operations of the airport. The court concluded the valuation witness for Bressi had based his opinion to some extent on future airport plans. It ruled the future plans admissible, stating: "I can't conceive that this jury can find reasonable future damage without future plans of the airport . . . but the measure of the taking is the taking; I agree." The court then instructed the jury that the County's resolution of necessity and complaint defined the measure of the taking.

In a letter to both counsel filed as the new trial order, the court said it had erred in admitting evidence of the County's future plans for development of Palomar Airport and allowing consideration of the County's future intentions regarding development in "mitigating damages." The order stated that on retrial the County could not introduce evidence of future plans and intentions in conflict with the resolution of necessity which described the taking. Also excluded were ". . . any non-binding promises, existing Federal or County regulations or ordinances currently limiting the use of the airport in any many [*sic*] inconsistent with the take . . . ." However, the County would be permitted to introduce ". . . evidence that because of the location, inherent physical limitations of the airport and the relationship of the Palomar Airport to other airports in the County what will be the likely future development of the airport."

## II

Bressi's evidentiary argument is quite simple. She says we must focus on the language of the resolution of necessity. That resolution subjects her property to overflight by *any* aircraft including, but not limited to jumbo jets or any other contrivance yet to be invented for flight in space. She claims that in light of the resolution, the County should not be allowed to

present evidence contradicting the resolution and thus compensate her for a lesser taking. Bressi metaphorically asserts the County cannot have its "take" and eat it too by introducing evidence showing that Palomar Airport will in all likelihood remain a satellite facility and will never expand to serve commercial aircraft.

The County responds by saying that we must focus on the important role of the jury in the judicial process. The County contends that Bressi's doctrinaire argument will merely frustrate the jury's role which is to determine the fair market value of the property taken. If the jury is deprived of evidence relating to all future plans affecting the development of Palomar Airport it will lack the essential evidence which it needs to decide true market value.

We frankly admit that each argument has certain appeal. Each recommended solution contains elements of logic and fairness. Unfortunately, each proposed solution creates the potential for unfairness. If we accept the County's argument Bressi faces the risk she will not be fully compensated for what the County has taken. If we accept Bressi's argument the County faces the risk the jury will compensate her for an amount greater than the true market value of her property. As we explain we conclude the preferable approach is the one recommended by Bressi.

California Constitution, article I, section 19 and Code of Civil Procedure section 1263.310 provide the owner of property taken for public use must be paid the fair market value of the property taken. Fair market value is defined as: ". . . the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, *each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.*" (Code Civ. Proc., § 1263.320; italics supplied.)

Before the public entity may commence an eminent domain proceeding its governing body must adopt a resolution of necessity that includes a description of the general location and extent of the property taken. (Code Civ. Proc., §§ 1245.220, 1245.230, subd. (b).) The resolution of necessity conclusively establishes the extent of the taking. (Code Civ. Proc., § 1245.250, subd. (a).) ██ If the judgment and resolution are in conflict the wording of the resolution controls. (*People* ex rel. *Dept. P. W.* v. *Schultz Co.* (1954) 123 Cal.App.2d 925, 931 [268 P.2d 117], disapproved on other grounds, *People* v. *Chevalier* (1959) 52 Cal.2d 299 [340 P.2d 598].) The public agency may not later expand the scope of the taking as defined in

the resolution of necessity without paying additional compensation. (*Id.,* at p. 935.)

■ The determination of just compensation is measured by what the owner has lost rather than by what the condemner has gained. (*People* ex rel. *Dept. of Transportation* v. *Southern Pac. Transportation Co.* (1978) 84 Cal.App.3d 315, 324 [148 Cal.Rptr. 535].) Where the proceeding involves condemnation of an easement and the underlying fee retains some value, compensation consists of the decrease in market value due to the easement, or the difference in market value before and after the taking. (*Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545, 553-554 [319 P.2d 1033]; see also *City of Oakland* v. *Nutter, supra,* 13 Cal.App.3d 752, 773-774 [92 Cal.Rptr. 347].) The jury in a condemnation action must ". . . once and for all fix the damages, present and prospective, that will accrue reasonably from the construction of the improvement and in this connection [the jury] *must consider the most injurious use of the property reasonably possible.*" (*People* ex rel. *Dept. Pub. Wks.* v. *Silveira* (1965) 236 Cal.App.2d 604, 622 [46 Cal.Rptr. 260], italics supplied.) In determining the most injurious use of the property reasonably possible, the jury must consider the entire range of uses permitted under the resolution of necessity.

■ Applying the foregoing principles to the case before us the jury on retrial may consider evidence concerning proposed, intended or possible future use of Palomar Airport *coextensive* with the scope of the easement. The County may not, however, introduce evidence which purports to limit the taking by contradicting the resolution itself. The jury must focus on the probability of the occurrence of particular uses under the avigation easements and not on uses which contradict those easements. In practical terms this means the County may not offer evidence that an airport accommodating jumbo jets will not be built, but may offer evidence of the number of jumbo jets which may use the airport.

In order to perform its function, the jury may review evidence of existing zoning as it bears on the availability of land for a particular use. (*People* ex rel. *State Public Works Bd.* v. *Talleur* (1978) 79 Cal.App.3d 690, 695 [145 Cal.Rptr. 150].) It may also consider uses to which the property could be devoted where there is a reasonable probability that zoning restrictions will be altered in the near future. (*Id.,* at p. 696; see also *Redevelopment Agency* v. *Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 86 [185 Cal.Rptr. 159].) Lawful legislative and administrative restrictions on property use are also factors ". . . the knowledgeable, willing buyer and seller would consider in agreeing upon a price to be paid . . . ." and may be considered by the jury in arriving at the fair market value. (*South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 982

[133 Cal.Rptr. 166] (regulations used by the Public Utilities Commission in fixing allowable return on investment); *People* ex rel. *State Public Works Bd.* v. *Talleur, supra,* 79 Cal.App.3d at pp. 695-696 (regulations of the California Coastal Zone Commission).) However, evidence of legislative and administrative restrictions is inadmissible if it limits the scope of the taking as defined in the resolution of necessity.

While we are mindful of the evidentiary difficulties which are still inherent in this case we nonetheless believe the procedure we have described has properly transferred to the County the economic burden which must be borne by one of the parties. We say "properly transferred" because it was, and still is, within the County's power to amend the resolution of necessity to specify the actual limits of its intended use. If the County believes that it risks too much by allowing the jury to value Bressi's loss as the easement is presently defined by the resolution of necessity, it should amend the resolution.[5] If the County wishes to gamble with the jury's verdict, but is later unsatisfied with the jury award, it can seek to abandon this proceeding under Code of Civil Procedure section 1268.510. Thus, because the County is able to avoid and/or minimize the entire financial risk it is only equitable that it bear the economic burden which it has created.

### DISPOSITION

The new trial order is affirmed. The retrial shall be consistent with the principles contained in this opinion. Cross-appeal from the judgment is dismissed. County to bear all costs.

Kremer, P. J., and Butler, J., concurred.

A petition for a rehearing was denied August 29, 1986, and the opinion was modified to read as printed above.

---

[5]The San Diego County Board of Supervisors earlier rejected Bressi's request for modification of the broad language of the easement because Bressi refused to waive her right to sue in inverse condemnation. Should the County elect to reconsider its refusal to modify the resolution, we assume the court would grant leave to amend the complaint before retrial. A modification could include a more specific description of aircraft using the easement, maximum frequency of flights and/or maximum noise levels.