[No. B032532. Second Dist., Div. One. May 3, 1989.]

EMIL INSTITORIS, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Appellant.

COUNSEL

Schimmenti, Mullins & Berberian and John J. Schimmenti for Plaintiff and Appellant.

James K. Hahn, City Attorney, Gary R. Netzer, Breton K. Lobner and John M. Werlich, Assistant City Attorneys, for Defendant and Appellant.

McDermott, Will & Emery, Richard K. Simon and Robyn-Marie Lyon as Amici Curiae on behalf of Defendant and Appellant.

OPINION

HANSON, J.—

### INTRODUCTION

This case, involving aircraft overflight of property near Los Angeles International Airport, raises issues involving how the statute of limitations and the acquisition of an avigation easement affect causes of action for inverse condemnation and nuisance.

### FACTS

On May 2, 1988, pursuant to California Rules of Court, rule 6(a), Emil Institoris (plaintiff in the trial court, and appellant on appeal) and the City of Los Angeles (defendant in the trial court, and respondent and appellant on cross-appeal) filed an agreed statement on appeal. The parties agreed that the following facts had been alleged and proved.

Defendant City of Los Angeles (City) owns Los Angeles International Airport under the jurisdiction and control of the Board of Airport Commissioners pursuant to the City Charter, article XXIV, sections 238-240.1. The airport contains four parallel runways. The two south of the airport (the South Runway Complex) began operation before 1960. In the 1960's, the City constructed two additional runways north of the airport (the North Runway Complex), which commercial jet aircraft were authorized to use on June 23, 1967.

Plaintiff subleased a 10-year leasehold interest in the Skyways Airport Hotel at Airport Boulevard and Arbor Vitae Street in Los Angeles. The leasehold began in January 1969 and expired in May 1978.

After the City completed the "New North Runway," commercial jet aircraft were authorized to use it on June 29, 1970.

Aircraft taking off generally fly west over the Pacific Ocean. They land above or near the subject property, east of the airport, producing Community Noise Equivalent Levels (CNEL) that have constituted a substantial interference with the subject property since 1967. Average noise from daily commercial jet aircraft landings for the North Runways, measured by "CNEL values," ranged from 85.2 in 1967 to 77.4 in 1973. The parties stipulated to expert testimony that occupants of a motel exposed to CNEL values above 70 would experience noise interference with speech intelligibility and with sleep unless the building incorporated special noise insulation features.

On June 20, 1973, plaintiff filed his governmental claim, alleging inverse condemnation and nuisance from noise of aircraft using Runway 24R/6L. Plaintiff filed his complaint for inverse condemnation and nuisance on November 29, 1973. On June 27, 1967, the noise over plaintiff's property caused by aircraft using the North Runway Complex was sufficient to cause the taking and damaging of that property.

The City acquired an avigation easement over plaintiff's property by prescription and adverse use and possession on or about June 28, 1972. That easement entitles the City to operate the airport with noise levels equal to 80.3 CNEL, the lowest noise level measured at the subject property before plaintiff filed his complaint. The City has not burdened the avigation easement.

Opening the New North Runway 24R/6L on June 29, 1970, decreased CNEL levels over the subject property. Plaintiff owned no interest in the subject property on June 27, 1967, the date of taking and damaging. Plaintiff elected to treat the alleged nuisance as a continuing interference.

The nuisance alleged by plaintiff is a public nuisance. The annoyance and inconvenience experienced by plaintiff (interruption of television and radio communication, interruption of sleep, and general annoyance) form the basis of the emotional distress claim, and are the same kind as that suffered by other residents in the vicinity of plaintiff's property. The only difference is the degree to which a particular resident experiences the aircraft annoyance.

The noise levels created by aircraft using the airport constituted the taking and damaging of the subject property between June 1967 and the trial. During this period, the noise levels created by aircraft using the

airport constituted a continuous nuisance, causing emotional distress and damage to the subject property, if legal defenses are not considered.

Plaintiff and City waived jury trial on all issues.

The agreed statement on appeal also stated that the following questions arose in and were decided by the superior court. First, the statute of limitations bars plaintiff's inverse condemnation cause of action filed November 1973 because the property was taken and damaged on June 27, 1967. Second, the June 27, 1967, taking of and damage to plaintiff's property bars him from recovering property damage for nuisance.

Third and fourth, the acquisition of an avigation easement by prescription and adverse possession bars plaintiff's causes of action for property damage based on nuisance and for inverse condemnation.

Fifth, because plaintiff filed his complaint for inverse condemnation more than five years after the taking and damaging, and because the defendant City has acquired an avigation easement by prescription, plaintiff is not constitutionally entitled to just compensation.

Sixth, the nuisance plaintiff alleges is a private as well as a public nuisance. Because the nuisance was a private nuisance, the trial court did not make a finding whether plaintiff's emotional distress damages caused by aircraft using the North Runway Complex at Los Angeles International Airport (LAX) differed in kind or only in degree from those experienced by other members of the public in plaintiff's neighborhood. (The agreed statement cites Civil Code sections 3480 and 3493. The City states that if the nuisance is not private, then since the annoyance differs only in degree, plaintiff has not established special injury.)

Seventh, if plaintiff is entitled to emotional distress damages because of nuisance, he may recover for 100 days before filing the claim, between June 20, 1973, and November 1973, in the amount of $340.

Eighth, plaintiff did not own the subject property at the time of the taking and damaging. This fact bars plaintiff from recovering inverse condemnation damages.

The trial court filed its judgment after trial by court on August 19, 1987. Pursuant to California Rules of Court, rule 2(a), the plaintiff filed a timely notice of appeal on January 27, 1988.

ISSUES

Plaintiff on appeal makes the following claims: 1. The City's acquisition of an avigation easement on June 28, 1972, does not bar his cause of action for inverse condemnation, which was filed more than five years after June 27, 1967.

2. The City's acquisition of an avigation easement on June 28, 1972, does not bar his claim for emotional distress based on continuous nuisance.

3. The emotional distress cause of action based on a continuous nuisance is not limited to the 100 days before presenting the government claim.

4. The public nuisance is especially injurious to himself in accordance with Civil Code section 3493.

5. A private nuisance can be found if the nuisance is based on the same facts which are permitted in accordance with the terms of a previously acquired avigation easement.

6. The acquisition of an avigation easement on or about June 1967 does not bar plaintiff's cause of action for damage to property based on continuous nuisance.

On cross-appeal, the City claims that the trial court erroneously awarded emotional distress damages to plaintiff in the sum of $340 based upon nuisance.

DISCUSSION

I.

Plaintiff on appeal claims that the City's acquisition of an avigation easement on June 28, 1972, does not bar his causes of action for inverse condemnation or for emotional distress based on continuous nuisance.

A. *The Inverse Condemnation Theory*

As of June 27, 1967, aircraft using LAX created noise sufficient to cause a taking and damaging of the subject property. Because the New North Runway decreased the noise level, plaintiff argues that the five-year

statute of limitations period[1] accrued on June 29, 1970, the date the New North Runway was opened. Plaintiff filed his complaint on November 29, 1973.

■ The time a cause of action accrues is a question of fact. (*Romo* v. *Estate of Bennett* (1979) 97 Cal.App.3d 304, 307 [158 Cal.Rptr. 635].) ■ The trial court's finding on the accrual of a cause of action for statute of limitations is upheld on appeal if supported by substantial evidence. (*Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471, 492 [115 Cal.Rptr. 162]; *Mehl* v. *People* ex rel. *Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 717 [119 Cal.Rptr. 625, 532 P.2d 489].)

In the case at bench, the parties submitted an agreed statement on appeal pursuant to California Rules of Court, rule 6(a). ■ Facts recited in an agreed statement take the place of factual findings, and bind the parties. (*Lane* v. *Wilkins* (1964) 229 Cal.App.2d 315, 322 [40 Cal.Rptr. 309]; *Larkin* v. *Bank of America* (1949) 93 Cal.App.2d 594, 602-603 [209 P.2d 801]; *McMullen* v. *Saunders* (1956) 138 Cal.App.2d 554, 555 [292 P.2d 282].)

■ The agreed statement contains several paragraphs pertinent to this issue.

Paragraph 8 (j) states: "[A]ircraft landings [from east to west] over or near the subject property result in Community Noise Equivalent Levels . . . which have constituted a substantial interference with the subject property since 1967."

Paragraph 8 (o) states: "On or about June 27, 1967, the noise levels over the subject property caused by aircraft using the North Runway Complex were sufficient to cause the taking and damaging of the subject property."

Paragraph 12 states: "The noise levels created by aircraft using Airport were sufficient to constitute the taking and damaging of the subject property during the time period between June, 1967, and the date of trial." [*Sic.*]

Relying on *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 294 [74 Cal.Rptr. 521, 449 P.2d 737], plaintiff argues that where a taking is continuous and the extent of the damage is unclear, the property owner should not be required to initiate piecemeal or premature litigation. *Pierpont Inn* concerned freeway construction encroaching on plaintiff's property. Because the state did not set the date of valuation by instituting an

---

[1] The parties agree that five years is the applicable limitations period for an inverse condemnation action. (See Code Civ. Proc., §§ 318, & 319; and *Smart* v. *City of Los Angeles* (1980) 112 Cal.App.3d 232, 235 [169 Cal.Rptr. 174].)

action to condemn before construction began, *Pierpont Inn* held that the state could not urge that plaintiff's claim was untimely because plaintiff waited until completion of the freeway to determine the damage to its remaining property. The logical time to bring the claim was when severance damages could be most accurately determined, i.e., after the freeway was built, not before construction had begun.

These facts and considerations make *Pierpont Inn* distinguishable from the case at bench, in which the plaintiff claims that *reduction* in the noise level brought about the accrual of the cause of action. In an inverse condemnation action involving overflight aircraft noise, the cause of action accrues "when the flights interfered with the use and enjoyment of plaintiffs' properties and resulted in a diminution of their market value," not when the interference later falls *below* that level. The cause of action accrues when the aircraft noise jumps markedly, not when it falls off. (*Aaron v. City of Los Angeles, supra,* 40 Cal.App.3d 471, 492.)

We therefore affirm the trial court's ruling that the cause of action accrued for statute of limitations purposes on June 27, 1967, and hence bars the inverse condemnation cause of action.

## B. *The Nuisance Theory*

Plaintiff claims defendant city's acquisition of an avigation easement on June 28, 1972, did not bar his claim for emotional distress based upon continuous nuisance.

Forty-nine United States Code sections 1301 and 1304 recognize the freedom of air transit through navigable airspace of the United States, which includes the airspace needed for aircraft to take off and land safely. "Avigation easements are required only when the noise, vibration, fumes, fuel particles and inconvenience caused by low-flying aircraft interfere with the use and enjoyment of the underlying property to the extent it amounts to a taking." (*County of San Diego v. Bressi* (1986) 184 Cal.App.3d 112, 115, fn. 1 [229 Cal.Rptr. 44]; see also *City of Oakland v. Nutter* (1970) 13 Cal.App.3d 752, 761-763 [92 Cal.Rptr. 347].)

The law clearly distinguishes between inverse condemnation and nuisance. A property owner has an inverse condemnation remedy for *property* damage arising from airport operations. The owner or occupant of property has a common law and statutory remedy based on nuisance for *personal* injuries arising from airport operations. (*Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 98 [160 Cal.Rptr. 733, 603 P.2d 1329]; *Baker v. Burbank-Glendale-Pasadena*

*Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866]; Civ. Code, § 3479.)

 In his amendment to complaint, plaintiff elected to treat the nuisance created by defendants as a "continuous" nuisance. *Baker v. Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 873, held that "[a]irport operations are the quintessential continuing nuisance," although questions have been raised about the correctness of that holding. (*Id.* at pp. 874-876, (conc. and dis. opn. of Mosk, J.).)

On June 20, 1973, plaintiff filed a governmental claim alleging inverse condemnation and nuisance arising from aircraft noise from Runway 24R/6L. On November 29, 1973, plaintiff filed his complaint for inverse condemnation and nuisance, which initiated the case at bench.

 *Nestle* v. *Santa Monica* (1972) 6 Cal.3d 920, 937-938 [101 Cal.Rptr. 568, 496 P.2d 480] establishes that for a continuing nuisance creating personal injuries, the statute of limitations does not run merely from the original intrusion. The statute of limitations will bar an action based on the original wrong once the limitations period has elapsed, but a plaintiff may bring successive actions for damages. (*Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107 [162 P.2d 625].) *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 869, states that recovery based on a continuing nuisance is limited to actual injury suffered before each action commences. An action is commenced when the complaint is filed. (Code Civ. Proc., § 350.)

 California Code of Civil Procedure section 340 requires a complaint for injury from a defendant's wrongful act or neglect to be filed within one year of the date the cause of action accrues. Thus the statute of limitations bars any recovery by plaintiff for harm suffered more than a year before he filed his complaint (i.e., before November 29, 1972, since plaintiff filed his complaint on November 29, 1973.)

Moreover, since the defendant is a governmental entity, the plaintiff had to comply strictly with mandatory requirements and time limits 0mposed by the Governmental Tort Claims Act. (*Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195, 1200, 1202 [249 Cal.Rptr. 457].) Before January 1, 1988, Government Code section 911.2 stated that "[a] claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than the 100th day after the accrual of the cause of action."

Thus plaintiff in the case at bench could have recovered for harm only in the 100-day period preceding the filing of the governmental claim on June

20, 1973, and in the period up to the filing of the complaint on November 29, 1973. In light of our discussion, *post,* however, even this recovery is unavailable to plaintiff under the circumstances of this appeal.

## II.

Plaintiff claims on appeal that in accordance with Civil Code section 3493, the public nuisance is especially injurious to himself, and seeks to recover for both harm to property and for personal harm on this theory.

Section 3493 states: "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."

Both parties agree that *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116 [99 Cal.Rptr. 350] sets forth the rules distinguishing a private from a public nuisance. That case also analyzes the effects of this distinction on a plaintiff's remedies.

As we have pointed out, a *private* nuisance can support recovery only for harm to a property interest, not for personal injury. Although a *public* nuisance can support recovery for either personal harm or property damage, a plaintiff suing on this basis must show special injury to himself of a character different in *kind*—not merely in degree—from that suffered by the general public. (22 Cal.App.3d at pp. 124-125.)

Contrary to City's contention, a private nuisance will support recovery not simply for a disturbance of land, but also for interference with any interest sufficient to be dignified as a property right. A leasehold or "tenancy for term" is one of these; a tenant may sue for nuisance based on interference with a leasehold. (*Id.* at p. 125; *Smith* v. *David* (1981) 120 Cal.App.3d 101 [176 Cal.Rptr. 112].)

Plaintiff on appeal claims the nuisance is both private and public. The trial court's judgment stated only that the City's acquisition of an avigation easement by adverse possession barred plaintiff's nuisance action for property damage, though the noise levels sufficient to constitute the taking and damaging of the property since June 1967 did not bar plaintiff's nuisance action for emotional distress damages.

The agreed statement on appeal contradicts itself in summarizing the trial court's findings on the nature of the nuisance. "Question F" asks, "Is the nuisance alleged by plaintiff a private nuisance as well as a public nuisance?" and answers, "Yes." "Question G," however, states that the court did not determine whether plaintiff's emotional distress damages differed in

kind or only in degree from those experienced by other members of the public "because the nuisance was found to be a private nuisance."

■ Emotional distress damages, as a personal injury, are not available in an action on a private nuisance. (*Venuto* v. *Owens-Corning Fiberglas Corp., supra,* 22 Cal.App.3d 116, 124-125.) ■ Thus the question on appeal is whether the plaintiff satisfied the showing of special injury to himself in person or property of a character different *in kind* from that suffered by the general public so that plaintiff can recover for personal harm based on a public nuisance, and whether plaintiff can recover for injury to his property interest based on a public or a private nuisance. (*Id.* at p. 124.)

The only citation to the record on appeal plaintiff offers to make this showing is as follows, from the agreed statement on appeal: "The noise levels created by aircraft using Airport were sufficient to constitute the taking and damaging of the subject property during the time period between June, 1967, and the date of trial. Additionally, during this time period, the noise levels created by aircraft using Airport were sufficient to constitute a continuous nuisance causing emotional distress and damage to the subject property, if legal defenses are not considered."

This citation, however, ignores the paragraph elsewhere in the agreed statement that finds: "The nuisance alleged by Plaintiff is a public nuisance. In general, the annoyance and inconvenience suffered by Plaintiff (interruption of television and radio communication, interruption of sleep and general annoyance), which is the basis for the emotional distress claim, is the same kind as that suffered by other residents in the general vicinity of Plaintiff's property; the only difference is the degree to which a particular resident experiences the aircraft annoyance."

The final paragraph quoted, *ante,* is one of a series from the agreed statement which describes it as a fact "agreed to by the parties as having been alleged and proved." We have concluded that such statements bind the parties agreeing to them. Plaintiff thereby conceded that the nuisance did not cause him to suffer the personal harm of emotional distress specially injurious to him of a character different in kind from that suffered by the general public. Thus plaintiff cannot recover emotional distress damages on a public nuisance cause of action.

Can plaintiff recover for damage to *property* on either a public or a private nuisance theory? As the trial court's judgment implies, this depends on whether the defendant's acquisition of an avigation easement precludes the existence of a nuisance harming plaintiff's property. *Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra,* 26 Cal.3d 86, cited by

plaintiff, cannot help answer this question, as that decision adjudicated an action for personal injuries based on nuisance theory. (*Id.* at p. 91.) Nor does *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862 resolve the issue, because it does not specify that its holding permitted actions for inverse condemnation *and* for nuisance to compensate damage to real property. (It can nevertheless be inferred from Justice Mosk's dissenting opinion that the nuisance claims in *Baker* alleged "injuries to persons or personal property." *Id.* at p. 877.)

We therefore assume that in *Baker,* the nuisance cause of action addressed personal injuries, and the inverse condemnation cause of action addressed property damage. To assume otherwise would make *Baker* inconsistent with prior law. *Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920, 937, likewise holds that a finding of no property damage in an inverse condemnation action bars a nuisance claim for *property* damage, although it allowed plaintiff to amend the nuisance count to allege *personal* injuries.

Although the defendant did not institute formal condemnation proceedings, Public Utilities Code section 21652 permits it to exercise the power of eminent domain to "acquire by purchase, gift, devise, lease, condemnation, or otherwise . . . [¶] [a]irspace or an easement in such airspace above the surface of property where necessary to permit imposition upon such property of excessive noise, vibration, discomfort, inconvenience, interference with use and enjoyment, and any consequent reduction in market value, due to the operation of aircraft to and from the airport." (See also Pub. Util. Code, § 21652, subd. (b); Gov. Code, § 50485.13.)

As we have pointed out, *ante,* the scope of an avigation easement includes noise, vibration, fumes, fuel particles and inconvenience caused by low-flying aircraft interfering with the use and enjoyment of underlying property. (*County of San Diego* v. *Bressi, supra,* 184 Cal.App.3d 112, 115.)

The trial court's judgment concluded that in June 1967 noise levels were sufficient to have constituted the taking and damaging of the subject property, and that defendant acquired an avigation easement over the property by adverse possession. The trial court further concluded that these noise levels and the acquisition of the avigation easement barred plaintiff's cause of action for property damage based on nuisance. Once the defendant acquired the easement and once the taking occurred, plaintiff no longer owned the property interest that his nuisance cause of action alleged that the defendant harmed. We therefore hold that the defendant's acquisition of an avigation easement over plaintiff's property interest precludes recovery for property damage on either public or private nuisance theory.

With regard to defendant's claims on cross-appeal, we have found the City liable for no nuisance damages for harm either to plaintiff's person or property, and therefore reverse the trial court's award of damages for emotional distress.

In sum, we hold 1) that there can be no recovery for the personal harm of emotional distress on a private nuisance theory; 2) that plaintiff's concession on appeal that the nuisance was public and of the same kind suffered by nearby residents bars recovery for the personal harm of emotional distress on a public nuisance theory; and that 3) the City's acquisition of an avigation easement bars plaintiff's recovery for property damage on either a public or private nuisance theory.

## DISPOSITION

On cross-appeal, we reverse the trial court's award of emotional distress damages to plaintiff, and we affirm the trial court's judgment on the appeal.

Parties to bear their own costs on appeal.

Spencer, P. J., and Ortega, J., concurred.

The petition of appellant Institoris for review by the Supreme Court was denied July 12, 1989.