[No. B039770. Second Dist., Div. Three. May 29, 1990.]

KENNETH L. BAKER et al., Plaintiffs and Appellants, v. BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, Defendant and Appellant.

[And four other cases.]*

---

* *Blaine* v. *Burbank-Glendale-Pasadena Airport Authority*; *Raasch* v. *Burbank-Glendale-Pasadena Airport Authority*; *Bourgeois* v. *Burbank-Glendale-Pasadena Airport Authority*; *Brown* v. *Burbank-Glendale-Pasadena Airport Authority.*

1604

COUNSEL

Schimmenti, Mullins & Berberian and John J. Schimmenti for Plaintiffs and Appellants.

McDermott, Will & Emery, Richard K. Simon and Erich R. Luschei for Defendant and Appellant.

James K. Hahn, City Attorney (Los Angeles), Gary R. Netzer, Assistant City Attorney, John R. Calhoun, City Attorney (Long Beach), and Roger P. Freeman, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Respondent.

OPINION

DANIELSON, J.—Plaintiffs, residents in the vicinity of the Burbank-Glendale-Pasadena Airport (the Airport), appeal from the judgment entered in favor of the Airport Authority (the Authority) in an action for inverse condemnation and nuisance wherein they sought damages based on both personal injuries and injuries to their respective properties. They contend the trial court erred in ruling their causes of action for inverse condemnation and for property damage based on nuisance barred by the applicable statutes of limitation. The Authority cross-appeals, seeking reversal of the court's award of damages to several of the plaintiffs based on their emotional distress claims. We affirm the judgment on appeal; on cross-appeal, we reverse the award of damages for emotional distress.

FACTS

In several consolidated actions, plaintiffs sued the Authority and others, alleging causes of action in inverse condemnation and nuisance based on noise, smoke and vibration due to overflying aircraft interfering with use and enjoyment of their respective properties, as well as injury to their persons.[1]

---

[1] Plaintiffs, who were grouped in five cases, filed their claims against the Authority, and their complaints in superior court, as follows: the Baker plaintiffs (case No. C 413871) filed their claim on February 23, 1982, and their complaint on June 10, 1982; the Blaine plaintiffs (case No. C 458245) filed both their claim and their complaint on June 29, 1983; the Raasch plaintiffs (case No. C 524879) filed their claim on April 19, 1984, and their complaint on December 3, 1984; the Bourgeois plaintiffs (case No. C 614675) filed their claim on May 30,

The Authority answered, generally denying the allegations of the complaints and alleging various affirmative defenses, including the bar of the statute of limitations (Code Civ. Proc., §§ 318, 319, 338, 340; Gov. Code, § 911.2), and of Civil Code section 3482 and Government Code section 6546.1. The Authority also alleged it had acquired title by prescription to an avigation easement, and that plaintiffs failed to allege special injuries entitling them to maintain an action for an alleged public nuisance, and in any event have treated the Airport as a permanent nuisance.

Twenty-four representative properties were selected from the five consolidated actions and severed therefrom for trial.

In pretrial rulings the court determined (1) the designated plaintiffs' nuisance actions were limited to damages occurring in the period from one hundred days prior to the filing of each of their claims up to the date of filing of each of their complaints (former Gov. Code, § 911.2); (2) in the event the Authority had acquired an avigation easement by prescription, the easement would bar plaintiffs' property damage claims under both nuisance and inverse condemnation theories, but not their nuisance claims for emotional distress; (3) plaintiffs' inverse condemnation claims were subject to the five-year statutes of limitations set forth in Code of Civil Procedure sections 318 and 319; and (4) neither Civil Code section 3482 nor Code of Civil Procedure section 731a applied to the nuisance causes of action.

The evidence established the Airport has operated continuously since 1930, and was purchased by the Authority from Lockheed Air Terminal (LAT), a private corporation, in July 1978. The sale expressly included "[a]ll of LAT's right, title and interest in and to all easements and other rights . . . over, in and to property owned by others and which benefit the Real Property or otherwise pertain to the operation of the Airport and Airport properties . . . ."

The length of the Airport's two runways, their configuration, the pattern of takeoffs and landings and the attendant flight paths, were consistent throughout the period of plaintiffs' complaints and for a number of years prior thereto.

Both parties presented expert testimony on the historical noise levels surrounding the airport, and, particularly, at the locations of plaintiffs' respective properties. The court found the testimony of the Authority's expert the more substantial, credible, and complete.

1986, and their complaint on August 28, 1986; the Brown plaintiffs (case No. C 640056) filed their claim on May 30, 1986, and their complaint on March 12, 1987.

Evidence presented by the Authority's expert, including maps showing community noise equivalent levels (CNEL), used to rate the impact of aircraft noise on areas surrounding California airports, established an overall general decrease in the noise levels in areas surrounding the Airport in the years from 1973 through 1986. Other evidence established that modern jet aircraft impose a lesser burden on the community than did early jet aircraft. In addition, plaintiffs' testimony established their problems with noise generated by the Airport began in 1965, when commercial jet aircraft began using the facility, and constituted an ongoing and substantial interference with the use and enjoyment of their properties in the early 1970's. Several of the plaintiffs testified the noise problem had lessened in the recent past.

The ambient noise level in the San Fernando Valley where the Airport is located, i.e., the level of noise emanating from sources other than aircraft using the Airport, can rise as high as the low 60's decibel CNEL level.

The court concluded CNEL contours provided a consistent and accurate means for distinguishing between the various plaintiffs' claims, and that the cutoff line should be drawn at the 65 decibel CNEL level. The latter determination was based on expert testimony that new residential construction within the 65 decibel CNEL contour should include soundproofing, but that residents in areas below the 65 decibel contour would not generally be seriously annoyed by aircraft noise. It was also based on the ambient noise level in the San Fernando Valley, and the fact that the 65 decibel level is the noise level established by the State Department of Transportation as the permissible noise level for airports located near or in residential communities. (Cal. Code Regs., tit. 21, § 5012.)

Evidence presented by an expert economist established that any impact of Airport noise upon plaintiffs' property values or rates of appreciation occurred in the early 1970's, and not later than 1973.

The trial court concluded the noise problem at the Airport had "stabilized" for statute of limitations purposes by 1973. The court noted the same conclusion was reached in an earlier lawsuit against LAT, in which eight of the present plaintiffs were also plaintiffs.

## CONTENTIONS

Plaintiffs challenge the trial court's rulings that their causes of action for inverse condemnation, and for property damage based on a nuisance theory, were barred by the statute of limitations.

The Authority seeks reversal of the court's ruling permitting recovery of damages for emotional distress under the nuisance theory, contending the court erred in ruling (1) the prescriptive easements would not bar claims based on emotional distress, (2) the Authority was not immunized against such claims by Civil Code section 3482, (3) plaintiffs were not required to prove the use of unnecessary and injurious methods of operation. The Authority also contends (4) the Airport is a permanent nuisance as a matter of law.

The cities of Long Beach and Los Angeles have filed an amicus brief in which they point out that the case is largely governed by the decision of Division One of this court in *Institoris* v. *City of Los Angeles* (1989) 210 Cal.App.3d 10 [258 Cal.Rptr. 418]. The cities urge that as a matter of public policy, plaintiffs should not be permitted to elect the applicable statute of limitations by electing whether an airport constitutes a permanent or a continuing nuisance.

## Discussion

*Inverse Condemnation*

With respect to the statute of limitations on causes of action for inverse condemnation, plaintiffs' counsel argued the date of taking was June 30, 1978, the date upon which the Authority acquired the Airport, and conceded those causes of action filed more than five years after that date (Brown, Bourgeois, and Raasch) were barred by the statute of limitations. (Code Civ. Proc., §§ 318, 319.)

■ The court found, as to the remaining properties which would otherwise be considered taken because they were located in areas exceeding the 65 decibel CNEL contour,[2] plaintiffs had no right of recovery on their inverse condemnation claims because the evidence established that as of the date of trial, airport noise no longer adversely affected the market value of the properties. In fact, from the early 1970's on, airport noise did not adversely affect the values or rates of appreciation of plaintiffs' properties, which appreciated at the same or greater rates as properties located in comparable, nonimpacted areas. (See *Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471, 483-484 [115 Cal.Rptr. 162].)

■ We agree with plaintiffs that there was evidence of a diminution in their property values prior to the period referred to by the trial court, and

---

[2] The evidence substantially supports the court's determination that CNEL values exceeding 65 decibels are sufficiently intrusive to amount to a taking or to give rise to a prescriptive easement, and that lesser CNEL values are not.

that the later normal rates of appreciation would not compensate them for the earlier loss. However, the court also pointed out that LAT owned the Airport in 1973, the latest time within which acts amounting to a taking, or property damage, occurred. This interference with plaintiffs' use of their property commenced the running of the five year period of LAT's prescriptive use, resulting in an avigation easement.

■ " 'Avigation easements are required only when the noise, vibration, fumes, fuel particles and inconvenience caused by low-flying aircraft interfere with the use and enjoyment of the underlying property to the extent it amounts to a taking.' [Citations.]" (*Institoris* v. *City of Los Angeles* (1989) 210 Cal.App.3d 10, 18 [258 Cal.Rptr. 418].) ■ Prescriptive easements are acquired by open and notorious use, hostile to the true owner, under a claim of right, and continuous for the statutory five-year period. (Civ. Code, § 1007; Code Civ. Proc., § 321; *Connolly* v. *McDermott* (1984) 162 Cal.App.3d 973, 976 [208 Cal.Rptr. 796]; *Applegate* v. *Ota* (1983) 146 Cal.App.3d 702, 708 [194 Cal.Rptr. 331]; *Twin Peaks Land Co.* v. *Briggs* (1982) 130 Cal.App.3d 587, 593 [181 Cal.Rptr. 25].) Continuity of use is not broken by change in ownership of the dominant tenement. (*Twin Peaks Land Co.* v. *Briggs, supra*, 130 Cal.App.3d at pp. 593-594.)

There was nothing to preclude plaintiffs from suing LAT for nuisance when it occurred, thereby interrupting LAT's prescriptive use. (*Welsher* v. *Glickman* (1969) 272 Cal.App.2d 134, 137-138 [77 Cal.Rptr. 141].) They failed to do so, and the use continued for the five-year period requisite to a prescriptive easement.

■ Having acquired the right to interfere with plaintiffs' use and enjoyment of their properties by prescription, LAT was not required to compensate them for the easement (*Warsaw* v. *Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 574-575 [199 Cal.Rptr. 773, 676 P.2d 584]), and could transfer it to the Authority, which it did. (*Twin Peaks Land Co.* v. *Briggs, supra*, 130 Cal.App.3d 587, 594.) Contrary to plaintiffs' assertions, the Authority's acquisition of the Airport did not commence new periods of limitation for the bringing of an action for inverse condemnation or of prescriptive use requisite to acquisition of an avigation easement. They cannot now sue the Authority for inverse condemnation.

*Nuisance*

■ In *Institoris* v. *City of Los Angeles, supra*, 210 Cal.App.3d 10, as in the present case, the defendant airport operator acquired an avigation easement over the plaintiff's property by adverse possession. The court stated:

"Once the defendant acquired the easement and once the taking occurred, plaintiff no longer owned the property interest that his nuisance cause of action alleged that the defendant harmed. We therefore hold that the defendant's acquisition of an avigation easement over plaintiff's property interest precludes recovery for property damage on either public or private nuisance theory." (*Id.*, at p. 22.) The trial court properly denied plaintiffs' claims for property damage on a nuisance theory.

 There remains a question as to the propriety of the trial court's award of damages for emotional distress. The court awarded such damages to five plaintiffs whose properties were located where the average daily Airport-generated noise levels had CNEL values exceeding 65 decibels during the "Nuisance Liability Window," that is, the period from 100 days prior to filing their claims to the filing of their complaints.

First, we note that emotional distress damages are available only in actions based on public nuisance, and require a showing of special injury to the plaintiff "of a character different *in kind* from that suffered by the general public." (*Institoris* v. *City of Los Angeles, supra*, 210 Cal.App.3d 10, 21, italics in original; Civ. Code, § 3493.) The difference shown here was one of degree only, in that these plaintiffs were subjected to greater noise levels than those suffered by the general public, including the remaining plaintiffs. These facts do not support an action based on public nuisance. (*Institoris, supra*, at p. 21; *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124 [99 Cal.Rptr. 350].)

Finally, and more importantly in this case, the Authority acquired a prescriptive easement from LAT to do the very things alleged by plaintiffs as a basis for recovery of damages for emotional distress. "[T]he scope of an avigation easement includes noise, vibration, fumes, fuel particles and inconvenience caused by low-flying aircraft interfering with the use and enjoyment of underlying property." (*Institoris* v. *City of Los Angeles, supra*, 210 Cal.App.3d 10, 22.) Having acquired an easement entitling the Airport to cause the described interferences, the Authority cannot thereafter be required to compensate the plaintiffs for its use of the easement. (*Warsaw* v. *Chicago Metallic Ceilings, Inc., supra*, 35 Cal.3d 564, 574.) In our view, this preclusion includes emotional distress suffered by any of the plaintiffs by reason of the permitted uses.

## Decision

On cross-appeal, we reverse the trial court's award of emotional distress damages to five of the plaintiffs. We affirm the trial court's judgment on the appeal. Each of the parties is to bear its own costs on appeal.

Klein, P. J., and Croskey, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied August 1, 1990.